IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 7 |
| DENNIS L. UHLS, | ) | |
| | ) | |
| Debtor. | ) | Bk. No. 21-40406 |
| | ) | |
| CITY OF ZEIGLER, ILLINOIS, | ) | |
| | ) | Adv. No. 21-04015 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DENNIS L. UHLS, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION**

This matter is before the Court on the Amended Complaint for Determination of Dischargeability of Debt filed by Plaintiff City of Zeigler, Illinois (hereinafter "Adversary Complaint" or "Adversary Proceeding") seeking a judgment denying the dischargeability of a debt owed to the City of Zeigler, Illinois (the "City") by Debtor/Defendant Dennis L. Uhls ("Uhls") under 11 U.S.C. §523(a)(2)(A) on the basis of fraud, and under 11 U.S.C. §523(a)(4) for larceny. The Adversary Complaint also seeks a denial of Uhls' discharge under 11 U.S.C. §727(a)(3) for destruction of records. With respect to the dischargeability claim under 11 U.S.C. §523(a)(2)(A), the City asks the Court to impute the fraudulent acts of the City treasurer upon Uhls, its independent auditor, pursuant to *Bartenwerfer v. Buckley*, 598 U.S. __, 143 S.Ct. 665 (2023).

## **FACTS**

Uhls was a certified public accountant retained by the City to perform annual audits of

1

City financial statements. During Uhls' tenure as auditor, an employee of the City, treasurer Ryan Thorpe ("Thorpe"), embezzled in excess of $300,000.00 from the City. Thorpe pled guilty to federal criminal charges relating to the embezzlement.[1] The City then filed a civil complaint in the Franklin County, Illinois Circuit Court against both Thorpe and Uhls (hereinafter "State Court Complaint" or "State Court Proceeding"). As to Thorpe, the City alleged in Count I of the State Court Complaint that Thorpe "stole, converted and misappropriated taxpayers' dollars." As to Uhls, the City alleged in Count II of the State Court Complaint, titled "Professional Negligence," that Uhls "negligently and carelessly failed to exercise such due care" in conducting his audits as would have allowed him to discover Thorpe's actions.[2] The City further alleged in Count III of the State Court Complaint, "Spoliation of Evidence," that Uhls "owed a duty to preserve material evidence to any potential litigation including but not limited to materials relating to his audits for the City of Zeigler" and "negligently and/or recklessly breached his duty to preserve the above-stated evidence by destroying it."[3]

During discovery in the State Court Proceeding, Uhls was unable to produce his audit papers and attested in interrogatory answers that he had destroyed the documents. The Circuit Court entered an Order for Sanctions on November 23, 2020, finding it "unreasonable that the Defendant would destroy documents after the Defendant was aware that Ryan Thorpe had misused city funds in September, 2017."[4] The Court further found that "Defendant's actions are willful and obstructive and that the Defendant has specifically prevented the City from obtaining records which are highly probative evidence and may relate to the liability of the Defendant."[5]

---

[1] Stipulation of Facts attached as Exhibit to Adversary Complaint, pp. 12-18, and admitted at trial in this Adversary Proceeding as Plaintiff's Exhibit A.
[2] State Court Complaint attached as Exhibit to Adversary Complaint, pp. 6-8.
[3] State Court Complaint attached as Exhibit to Adversary Complaint, pp. 8-10.
[4] Order for Sanctions attached as Exhibit to Adversary Complaint, p. 21.
[5] Order for Sanctions attached as Exhibit to Adversary Complaint, p. 21.

As a sanction, the Circuit Court imposed remedies afforded under Illinois Supreme Court Rule 219(c) for violation of discovery rules, by striking all Uhls' pleadings and ordering that a default judgment be entered.[6] On January 19, 2021, the Circuit Court entered a judgment in favor of the City and against Uhls and Thorpe on the State Court Complaint in the amount of $431,216.31 plus an additional $5,384.00 in attorney's fees against Uhls pursuant to the Order for Sanctions.[7]

On September 24, 2021, Uhls filed a Chapter 7 Petition in this Court. The City then brought this Adversary Proceeding seeking a denial of dischargeability of the state court judgment under 11 U.S.C. §523(a)(2)(A) (fraud), and 11 U.S.C. §523(a)(4) (larceny), and a denial of Uhls' discharge under 11 U.S.C. §727(a)(3) (destruction of documents). In "Count I - Actual Fraud," the City alleged that "Uhls was an active participant in Thorpe's embezzlement scheme and conspired with Thorpe to embezzle said monies" adding that "Uhls' refusal to participate in the underlying action prevented the City of Zeigler from obtaining discovery which it reasonably believes would have shown said fraudulent activity."[8] Uhls denied the allegations and further asserted that the debt he owed to the City "was created due to a judgment for professional negligence."[9]

In "Count II – Larceny," the City alleged that "Uhls was an active participant in Thorpe's larceny and conspired with Thorpe to embezzle said monies. Uhls' refusal to participate in the underlying action prevented the City of Zeigler from obtaining discovery which it reasonably believes would have shown his involvement in said larceny."[10] Uhls denied the allegations.[11] In

---

[6] Order for Sanctions attached as Exhibit to Adversary Complaint, p. 21-22.
[7] Judgment Order attached as Exhibit to Adversary Complaint, pp. 23-24, and admitted at trial in this Adversary Proceeding as Plaintiff's Exhibit B.
[8] Adversary Complaint ¶13.
[9] Uhls' Answer to Adversary Complaint ¶12 - ¶13.
[10] Adversary Complaint ¶16.
[11] Uhls' Answer to Adversary Complaint ¶16.

3

"Count III – Destruction of Documents," the City alleged that "[a]fter the institution of the case against Uhls in state court, Uhls destroyed his business file maintaining all the records of his transactions as well as his supposed review of City actions." The City further asserted that "Uhls' destruction of his file was a willful and conscious attempt to conceal his role in the embezzlement" and that the City's "ability to prove its claim both in this case and in the underlying civil case, were materially impacted by Uhls' intentional destruction of his business records."[12] Uhls denied those allegations.[13]

Prior to trial on the Adversary Complaint, the parties filed their Exhibit Lists and Witness Lists. Included among Uhls' proposed exhibits were audit work papers for the City of Zeigler audits for the years 2012 through 2016. The City filed an Objection to Defendant's Exhibits seeking to bar the admission of the audit work papers on the basis that Uhls had previously stated in the State Court Proceeding and during discovery in this Adversary Proceeding that he had destroyed the documents. Uhls filed a Response to the City's Objection stating that he had recently found a CD containing the work papers and had been unaware that he had the CD until February, 2023. He further argued that the City must prove that he destroyed records from which his financial condition or business transactions might be ascertained and that the exhibits were relevant to that issue. The City's Witness List included Ryan Thorpe, the former City treasurer. Uhls filed a Motion to Bar Thorpe as a witness on the basis that he was not previously disclosed during discovery.

The parties also submitted pre-trial briefs. In its brief, the City argued that because Uhls' pleadings were stricken in the State Court Proceeding and a default judgment entered, Uhls is

---

[12] Adversary Complaint ¶19 - ¶21.
[13] Uhls' Answer to Adversary Complaint ¶19 - ¶21.

4

barred in this Adversary Proceeding from challenging any of the allegations made by the City in the State Court Complaint. According to the City, that establishes all the facts necessary for it to carry its burden of proof on all counts of the Adversary Complaint. Further, as to Count I, "Fraud" pursuant to §523(a)(2)(A), the City introduced a new argument. Relying on the recent Supreme Court opinion *Bartenwerfer v. Buckley*, 598 U.S. __, 143 S.Ct. 665 (2023), the City argued that Uhls need not have been an active participant in Thorpe's fraud for his debt to be nondischargeable. Uhls emphasized in his pre-trial brief that the City had alleged professional negligence and spoliation of evidence in the State Court Proceeding, but had not alleged fraud or embezzlement, nor did the Circuit Court's Judgment Order contain any findings of fraud, larceny, embezzlement or conspiracy to commit a crime by Uhls.

At trial, the City conceded Uhls' Motion to Bar Thorpe as a witness and proceeded with Uhls as its only witness. Uhls' attorney elicited additional testimony from Uhls on cross-examination. Uhls testified that he served as the City's independent auditor from 2004 through 2016, and in that role was obligated to express an opinion as to the accuracy of the City's financial statements. He testified that it was not part of his role as an independent auditor to detect fraud. As part of his annual audit, Uhls reviewed bank statements, among other documents. Uhls acknowledged that Thorpe only provided him copies of the City bank statements in 2013, rather than original statements. He stated that he advised the City Finance Commissioner of that fact and requested the originals. He testified that he did not receive the original statements and noted that information in his work papers. None of the testimony at trial established any relationship or collusion between Uhls and Thorpe.

Uhls explained that he kept his audit work papers in both paper and CD form, and that it was his practice to shred the paper records three years after each audit. He confirmed that he

had shredded the paper records for the City audits on that schedule. As to the CD form of the audit papers, Uhls testified that he could not find the CD containing the City audits until February, 2023 when he searched through boxes he had stored in his mother's garage following the sale of his home in April, 2022. He acknowledged that he did not produce the work papers in the State Court Proceeding and that he had testified during his December, 2022 deposition in this Adversary Proceeding that the documents had been destroyed. He expressed regret that he had not found the CD sooner as he believed it would have allowed him to prevail in the State Court Proceeding. Uhls agreed with counsel for the City that he was a fiduciary for the City, but testified that he had no knowledge that Thorpe was embezzling funds from the City. The City's Exhibits were entered into evidence without objection. After the City rested its case, counsel for Uhls asked the Court to enter judgment against the City and in favor of Uhls on all Counts, asserting that the City had failed to meet its burden of proof and therefore Uhls need not present his case in defense. The Court directed the parties to file briefs on the applicability of *Bartenwerfer* to this case and left open the possibility that Uhls would return to Court to present his defense. The Court has not yet ruled on the admissibility of Uhls' newly discovered work papers.

## DISCUSSION

The Court must first determine whether the City's burden of proof may be established through application of the doctrine of collateral estoppel, and if not, whether the City has met its burden of proof independently on each of the three counts of its Adversary Complaint.

### Collateral Estoppel

The City bears the burden of proving each element of its claims under both 11 U.S.C. § 523(a) and §727(a)(3). *Matter of Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992) (burden of proof

in dischargeability actions under §523(a)); Fed. R. Bankr. P. 4005 (burden of proof on a complaint objecting to discharge under §727). That burden of proof must be met by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991) (as to actions under §523(a)); *In re Scott*, 172 F.3d 959, 966-967 (7th Cir. 1999) (applying the *Grogan* preponderance standard to actions under §727(a)). To further the policy of providing a debtor a fresh start in bankruptcy, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (with respect to discharge exceptions under §727(a)); *Meyer v. Rigdon,* 36 F.3d 1375, 1385 (7th Cir. 1994) (as to dischargeability exceptions under §523(a)).

Initially, the Court must address the City's argument that it has met its burden of proof in this Adversary Proceeding solely because Uhls' pleadings were stricken and a default judgment entered in the State Court Proceeding. The doctrine of collateral estoppel "bars relitigation of issues determined in prior court actions and applies to discharge exception proceedings under §523(a)." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014). Collateral estoppel may also be applied in discharge proceedings under §727. *In re Holstein*, 299 B.R. 211, 227 (Bankr. N.D. Ill. 2003).

In applying collateral estoppel, "[f]ederal courts must give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." *Gambino v. Koonce,* 757 F.3d at 608; See also, *In re Holstein*, 299 B.R. at 227. When applying Illinois law, "collateral estoppel requires that (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Gambino v. Koonce*, 757 F.3d at 608, *quoting Am. Family Mut. Ins. Co. v.*

7

*Savickas*, 193 Ill.2d 378, 250 Ill. Dec. 682, 739 N.E.2d 445, 451 (2000). Additionally, "the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id. See also Meyer v. Rigdon*, 36 F.3d at 1379 (default judgment is not generally given preclusive effect under the doctrine of collateral estoppel because the issues in the prior proceeding have not actually been litigated.)

As to Count I of the Adversary Complaint, "fraud" pursuant to §523(a)(2)(A), the doctrine of collateral estoppel does not apply. To prevail under §523(a)(2)(A), the City must show that the debt was "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). The City alleged in Count I of the Adversary Complaint that Uhls actively participated in Thorpe's embezzlement scheme and conspired with Thorpe to embezzle funds from the City, and that Uhls' participation in the scheme to embezzle money constitutes actual fraud. The City made no such allegations of fraud or embezzlement against Uhls in its State Court Complaint. There, the City alleged that Uhls breached his duty of care as an auditor in failing to discover Thorpe's embezzlement and in failing to preserve his audit records. Therefore, the issues presented in the State Court Proceeding were not identical to the issues presented in this Adversary Proceeding as required for the application of collateral estoppel. Moreover, the issues presented in the State Court Proceeding were never actually litigated, as the Circuit Court entered a default judgment against Uhls as a discovery sanction. Accordingly, the City must meet its burden of proof independently on Count I of the Adversary Complaint.

Likewise, the doctrine of collateral estoppel does not apply to Count II of the Adversary

Complaint, "larceny" under §523(a)(4). Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). In Count II of its Adversary Complaint, the City alleges that Uhls was an active participant in Thorpe's larceny and conspired with Thorpe to embezzle money from the City. Nowhere in the State Court Complaint did the City make such allegations against Uhls. There, the City merely alleged that Uhls was negligent in failing to detect Thorpe's embezzlement and in failing to retain his records, and the Circuit Court entered its default judgment on those allegations. Once again, the issues in the State Court Proceeding were not identical to the issues in Count II of this Adversary Proceeding. The City must meet its burden of proof on Count II independent of the State Court Proceedings.

As to Count III of the Adversary Complaint, denial of discharge under §727(a)(3) for destruction of documents, the collateral estoppel analysis is not as straightforward, but the result is the same. Section 727(a)(3) provides for a denial of discharge where "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. §727(a)(3). The City alleges in Count III of the Adversary Complaint that "Uhls' destruction of his file was a willful and conscious attempt to conceal his role in the embezzlement" and that the City's "ability to prove its claim both in this case and in the underlying civil case, were materially impacted by Uhls' intentional destruction of his business records." In Count III of the State Court Complaint, "Spoliation of Evidence," the City alleged that Uhls "owed a duty to preserve material evidence to any potential litigation including but not limited to materials relating to his audits for the

City" and "negligently and/or recklessly breached his duty to preserve the above-stated evidence by destroying it."

Although the allegations in Count III of this Adversary Proceeding ascribe a far more nefarious motive for Uhls' document destruction, both the State Court Complaint and the Adversary Complaint do allege that Uhls' destruction of documents has prevented the City from proving its case. Moreover, in the State Court Proceedings, the Circuit Court found that Uhls' destruction of documents did, in fact, prevent the City from proving its allegations of negligence and the Circuit Court entered default judgment against Uhls as a sanction.

However, while Uhls' destruction of documents is pertinent to both proceedings, the legal issues are not the same. Whether Uhls should be sanctioned for a discovery violation under Illinois Supreme Court Rule 219(c) in the State Court Proceeding is an entirely different issue from whether his bankruptcy discharge should be denied pursuant to the specific requirements of §727(a)(3) of the Bankruptcy Code. For example, §727(a)(3) asks whether a debtor destroyed documents "from which the debtor's financial condition or business transactions might be ascertained." Uhls has argued that his audit papers are not the type of documents contemplated by §727(a)(3) in that they are not related to his own personal financial condition or business transactions, but rather those of the City. There is support for Uhls' argument. The Seventh Circuit has suggested that §727(a)(3) merely requires that a debtor keep the primary documents that disclose the business transactions ordinarily required by the Internal Revenue Service. *Matter of Juzwiak*, 89 F.3d 424, 429 n. 2 (7th Cir. 1996).

Section §727(a)(3) also asks whether the destruction of documents "was justified under all of the circumstances of the case." Uhls testified on cross-examination to the circumstances leading to his destruction of his audit papers and also to the circumstances leading to his late

discovery of the CD form of those papers. Furthermore, he has offered to produce the newly discovered documents which the City asserts are needed to ascertain his financial condition and business transactions. As such, the Court cannot conclude that the issue regarding destruction of records in the State Court Proceedings was identical to the issues relating to those records now presented in this Adversary Proceeding. The City must therefore meet its burden of proof on Count III separately from the findings in the State Court Proceeding.

Burden of Proof as to Count I

The Court then moves its analysis to whether the City has met its burden of proof on Count I of the Adversary Complaint – "Fraud". In Count I, the City alleges that Uhls participated in Thorpe's embezzlement and fraud. At trial, however, the City offered no evidence to support those allegations. In fact, in its examination of Uhls and its arguments to the Court at trial, the City did not even suggest that Uhls was engaged in such behavior. Instead, the City asked the Court to impute the fraudulent acts of Thorpe to Uhls pursuant to the recent Supreme Court decision, *Bartenwerfer v. Buckley*, 598 U.S. __, 143 S.Ct. 665 (2023).

In *Bartenwerfer,* the Supreme Court found that fraudulent intent for purposes of §523(a)(2)(A) could be imputed to a faultless individual if that individual and the fraudulent actor had a relationship that gave rise to vicarious liability under applicable non-bankruptcy law. *Id.* at 675-676. In that case, a California state court had entered a judgment against the Bartenwerfers for selling a home with undisclosed defects. *Id.* at 670. The home had been purchased jointly and remodeled by the Bartenwerfers prior to their marriage, although Mrs. Bartenwerfer was largely uninvolved. *Id.* When the Bartenwerfers filed bankruptcy, Buckley, the judgment creditor, brought a dischargeability action under §523(a)(2)(A) against both debtors. *Id.* at 671. The bankruptcy court found that although Mr. Bartenwerfer had committed

the fraud, his fraudulent intent could be imputed to Mrs. Bartenwerfer because the two had formed a partnership to renovate and sell the house. *Id.*

Relying on the passive voice in §523(a)(2)(A), "obtained by … fraud," the Court concluded that Congress did not limit the dischargeability exception to only those debtors who had committed the fraud. *Id.* at 672-673. The Court explained that the scope of liability for another's fraud is limited only by the underlying non-bankruptcy law, in that case California partnership law which imposes vicarious liability upon business partners. *Id.* at 675. In other words, according to the Court, §523(a)(2)(A) "takes the debt as it finds it, so if California did not extend liability to honest partners, §523(a)(2)(A) would have no role to play." *Id.* Mrs. Bartenwerfer was therefore liable for the fraudulent acts of her business partner, Mr. Bartenwerfer, based on California partnership law.

The question then in this Adversary Proceeding is whether Thorpe's fraud may be imputed to Uhls under Illinois law. In its post-trial brief, the City argues that because Uhls was an auditor of public funds and failed to uncover Thorpe's embezzlement, he is "as culpable for the debt as the actual embezzler."[14] The City offers no Illinois case law or statute, however, to support this assertion and the Court has found none. Like the applicable California law in *Bartenwerfer*, Illinois partnership law provides for vicarious liability of partners for the debts of the partnership. Illinois Uniform Partnership Act, 805 ILCS 206/306(a) (2022). Here, however, Uhls was not in a partnership with either Thorpe or the City.

Illinois law imposes vicarious liability in other specific situations as well. *See* Illinois Family Expense Act, 750 ILCS 65/15 (2022) (expenses of family chargeable against both spouses); Illinois Liquor Control Act (Illinois Dram Shop Act), 235 ILCS 5/6-21 (2022) (tavern

---

[14] Plaintiff's Post-trial Brief, p. 2.

owner liability for acts of intoxicated patron); Illinois Parental Responsibility Law, 740 ILCS 115 (2022) (parent liable for willful or malicious acts of minor child); *Zedella v. Gibson*, 165 Ill. 2d 181, 650 N.E.2d 1000 (1995) (liability for negligent entrustment of vehicle or dangerous article); *Peetoom v. Swanson,* 334 Ill.App.3d 523, 526-527, 778 N.E.2d 291, 294-295 (2nd Dist. 2002) (corporate veil pierced where corporation is mere alter ego of individual); *McQueen v. Green*, 202 N.E.3d 268, 460 Ill. Dec. 726 (Ill. 2022) (reviewing law of respondeat superior liability of employer for acts of employee); *Patrick Engineering, Inc. v. City of Naperville*, 976 N.E.2d 318, 364 Ill. Dec. 40 (Ill. 2012) (summarizing principal's liability for acts of agent). None of these special situations are applicable to the case at hand. Thorpe and Uhls were not in a partnership, or any business relationship. The City, not Uhls, was Thorpe's employer. The Court knows of no legal theory available under Illinois law which allows the City to impute the fraudulent acts of its own employee to a person under contract with the City. Judgment is therefore entered in favor of Defendant Uhls on Count I.

<u>Burden of Proof as to Count II</u>

Next, the Court considers whether the City has met its burden of proof on Count II – "Larceny." Section 523(a)(4) excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). The City titles Count II "Larceny," but further alleges that Uhls "conspired with Thorpe to embezzle said monies." In its post-trial brief, the City also argues that Uhls acted as a fiduciary of the City. It appears, therefore, that the City is proceeding on multiple theories simultaneously. As this Court has explained, "[i]n order to prevail under the fiduciary fraud portion of the statute, a creditor must prove that (1) a fiduciary relationship existed between [the creditor] and the debtor, and (2) fraud or defalcation was committed by the debtor in the course of that relationship." *In re*

*Wathan*, 2010 WL 1875247, at *2 (Bankr. S.D. Ill. 2010) *quoting In re Beetler,* 368 B.R. 720, 725 (Bankr. C.D. Ill. 2007).

Here, the City argues that Uhls was its fiduciary and Uhls agreed with that characterization at trial. Whether a debtor is a fiduciary under §523(a)(4) is not a matter of opinion, however, but rather a question of federal law. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). The Seventh Circuit has interpreted §523(a)(4) as reaching only those relationships in which "there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge." *Matter of Woldman*, 92 F.3d 546, 547 (7th Cir. 1996). The requisite "substantial inequality" for purposes of §523(a)(4) may be found, for example, where a parent trustee maintains a fund for a child beneficiary, where a statute imposes fiduciary responsibilities upon an investment advisor to his client, or where an attorney is deemed to have fiduciary responsibilities by his Code of Professional Responsibility. *In re Berman*, 629 F.3d 761, 771 (7th Cir. 2011). Although not determinative here, it is noteworthy that under Illinois law, an independent auditor does not owe its client a fiduciary duty absent a showing of superior influence or dominance over the client. *Asian Human Services Family Health Center, Inc. v. Asian Human Services, Inc*., 166 N.E.3d 791, 796-797, Ill. Dec. 361, 366-367 (1st Dist. 2020).

In this case, there is no evidence that Uhls possessed "substantial inequality in power or knowledge" over the City. The City hired Uhls to conduct annual audits, and the evidence shows that Uhls was dependent upon the City for the information required to perform those audits. In fact, the evidence at trial showed that Uhls unsuccessfully attempted to obtain original bank statements from the City that may have revealed Thorpe's embezzlement. Ultimately, after reviewing the evidence in this case, the Court cannot find that a fiduciary relationship existed

between the parties. Therefore, the City cannot prevail under the fiduciary fraud portion of the statute.

With respect to the remaining portion of §523(a)(4), the City presented no evidence of embezzlement or larceny by Uhls. Describing those acts, the Supreme Court explained that "'embezzlement' requires conversion, 'larceny' requires taking and carrying away another's property." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 268 (2013). Absolutely no evidence was presented that Uhls converted or took any funds or property from the City. Accordingly, the City has failed to meet its burden on Count II of the Adversary Complaint and judgment is entered in favor of Defendant Uhls on Count II.[15]

Burden of Proof as to Count III

Finally, the Court looks to whether the City has met its burden of proof on Count III of the Adversary Complaint – "Destruction of Documents". Section 727(a)(3) provides for a denial of discharge where -

> "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. §727(a)(3).

The purpose of §727(a)(3) is to allow the trustee and creditors sufficient information to trace a debtor's financial history. *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999). Without proper records, a debtor "could obtain a discharge while frustrating a trustee's ability to liquidate prepetition assets to satisfy prepetition debts." *Id*. This Court's prior rulings on §727(a)(3) are

---

[15] The Court need not consider the applicability of *Bartenwerfer v. Buckley*, 598 U.S. __, 143 S.Ct. 665 (2023) to Count II because the Supreme Court limited its analysis in that case to §523(a)(2)(A), and in any event, no special relationship existed between Uhls and Thorpe to support vicarious liability under Illinois law as set forth herein.

instructive. For example, the Court denied the discharge of debtors who failed to produce adequate records to explain their disposition of millions of dollars. *In re Connors*, 254 B.R. 230 (Bankr. S.D. Ill. 2000) *aff'd* 273 B.R. 764 (S.D. Ill. 2001) *aff'd* 283 F.3d 896 (7th Cir. 2002). On the other hand, the Court found insufficient evidence to deny the discharge of debtors who allegedly lacked receipts for their donation of leftover restaurant equipment, where the Chapter 7 Trustee testified that she had carefully reviewed the debtors' schedules and was satisfied with the information in those documents. *In re Dhillon*, 2012 WL 2685204 (Bankr. S.D. Ill. 2012); *See also, In re Hartford*, 525 B.R. 895, 912 (Bankr. N.D. Ill. 2015) (bank failed to show that the absence of books and records had any bearing on the administration of the debtor's case).

In its pre-trial brief, the City asserts that "Uhls' destruction of his file materials has prevented any meaningful exploration of his financial condition and business transactions." Those assertions are contrary to the findings of the Chapter 7 Trustee in this case. The Chapter 7 Trustee filed her Report of No Distribution on November 12, 2021, attesting that she had "made a diligent inquiry into the financial affairs of the debtor and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." Thus, there is no evidence that Uhls' records were insufficient for the Chapter 7 Trustee to ascertain Uhls' financial condition or business transactions.

Nonetheless, the City insists that Uhls' records of the City's annual audits are necessary for a meaningful exploration of Uhls' financial condition and business transactions, and that the City has been prevented from conducting that meaningful exploration by Uhls' destruction of his file materials. However, Uhls provided his newly discovered CD audit records to the City prior to trial and included those records in his Exhibit List. The City refused to consider those records and filed an Objection to their use as Exhibits at trial. The Court finds it disingenuous for the City

16

to insist that it needs Uhls' audit records, while at the same time refusing to consider the records once offered.

Although Uhls tendered the CD records near the time of trial, the Court does not find that his belated production of those records warrants denial of discharge. Section 727(a)(3) not only looks at a debtor's failures with respect to his documents, but whether "such act or failure to act was justified under all of the circumstances of the case." At trial, Uhls testified that he could not find the CD audit records until February, 2023 when he searched through boxes he had stored in his mother's garage following the sale of his home in April, 2022. He explained that his office had been in his home and that when he retired in April, 2022 he sold the property and moved in with his mother, storing his office contents in her barn, garage, and basement. When he finally began going through his stored items in February, 2023, he discovered the CD with his audit records for the City and his other municipal clients. He told the Court that he wished he had found the CD sooner as he believed it would have allowed him to prevail in the State Court Proceeding. The Court found Uhls' testimony credible and further finds that his testimony supports a finding that his failure to turn over the audit records earlier was justified under all the circumstances of the case. Accordingly, the City has failed to meet its burden of proof with respect to Count III of the Adversary Complaint and judgment is entered in favor of Uhls on Count III.

For the reasons set forth herein, Judgment is entered in favor of the Defendant Dennis L. Uhls on Counts I, II, and III of the Adversary Complaint.

See Separate Order entered this date.

ENTERED: June 29, 2023

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE